# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 12-629V
Filed: February 29, 2016
Not for Publication

*************************************
L.A., a Minor, by His Parents and Natural   *
Guardians, MAGNUS AKERSTROM            *
and BRANDI AKERSTROM,                  *
                                       *    Interim attorneys' fees and costs
                Petitioners,           *    decision; respondent defers to
   v.                                  *    Special Master's discretion
                                       *
SECRETARY OF HEALTH                    *
AND HUMAN SERVICES,                    *
                                       *
                Respondent.            *
                                       *
*************************************

<u>Clifford J. Shoemaker</u>, Vienna, VA, for petitioners.
<u>Glenn A. MacLeod</u>, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On January 18, 2016, petitioners filed a Motion for Interim Attorneys' Fees and Costs, requesting $356.95 in petitioners' costs, $65,752.25 in interim attorneys' fees, and $28,332.81 in interim attorneys' costs. No decision on entitlement has been issued.

For the reasons set forth below, the undersigned awards petitioners $94,442.01 in interim attorneys' fees and costs incurred up to and including January 18, 2016, when petitioners filed their application for interim attorneys' fees and costs.

---

[1] Because this unpublished decision contains a reasoned explanation for the special master's action in this case, the special master intends to post this unpublished decision on the United States Court of Federal Claims's website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy.  When such a decision is filed, petitioner has 14 days to identify and move to redact such information prior to the document's disclosure.  If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

**PROCEDURAL HISTORY**

On September 24, 2012, petitioners Magnus and Brandi Akerstrom filed a petition on behalf of their son, L.A., under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) ("Vaccine Act"). Petitioners alleged that their son developed seizures and an encephalitis as a result of the influenza ("flu") vaccine he received on December 29, 2010. Pet. at 2. The case was originally assigned to Special Master Zane, but was reassigned to the undersigned on October 17, 2012.

The initial status conference was held on January 23, 2013. The undersigned noted that L.A. was ill before he received a flu vaccine. The undersigned explained that despite L.A.'s illness, flu vaccine could have been a substantial factor in causing L.A.'s vaccine injuries. See Shyface v. Sec'y of HHS, 165 F.3d 1344 (Fed. Cir. 1999) (DTP vaccination plus E.coli infection caused high fever and death). Respondent's counsel said his client was willing to receive a reasonable demand from petitioners.

The undersigned issued an Order on June 10, 2013 granting petitioners' informal motion for an extension of time until August 6, 2013 to communicate a settlement demand to respondent. On August 6, 2013, petitioners filed a status report asking for a one week extension of the deadline to forward a settlement demand to respondent, which the undersigned granted on the same day. Petitioners filed a status report on August 12, 2013, saying that they had sent a demand to respondent.

A telephonic status conference was held on September 9, 2013. Respondent's counsel said he was still discussing petitioners' settlement demand with his client. During the next status conference on October 30, 2013, respondent's counsel informed the undersigned that his client was not willing to engage in settlement negotiations. The undersigned set a deadline of December 2, 2013 for respondent to file her Rule 4(c) Report, which respondent filed on that date.

On December 3, 2013, the undersigned held a telephonic status conference. The undersigned ordered petitioners to file an expert report. After filing three motions for extension of time, petitioners filed an expert report by Dr. Carlo Tornatore on July 14, 2014. Dr. Tornatore concluded that the flu vaccine caused L.A. to develop bilateral striatal necrosis.

The undersigned held a telephonic status conference on July 18, 2014. The parties indicated they were engaged in settlement negotiations, and that respondent was deciding whether to file an expert report. The undersigned ordered that if respondent chose to file an expert report, it was due on September 16, 2014. Respondent filed a motion for extension of time to file her expert report on September 12, 2014, which the undersigned granted on September 16, 2014.

After two motions for extension of time, respondent filed expert reports by Dr. Michael H. Kohrman and Dr. Hayley Altman Gans on October 31, 2014. Both doctors concluded that

2

L.A.'s bilateral striatal necrosis was likely due to a mycoplasma infection, not the flu vaccine. Ex. A at 10; Ex. B at 8.

The undersigned held a telephonic status conference on November 5, 2014, ordering petitioners to file a supplemental expert report by Dr. Tornatore on February 11, 2015. After two motions for extension of time, petitioners filed Dr. Tornatore's supplemental report on May 11, 2015. Dr. Tornatore disagreed with respondent's experts' conclusions that the Flumist vaccine was not involved in L.A. developing bilateral striatal necrosis. Ex. 53 at 1-2.

A telephonic status conference was held on May 18, 2015. Respondent's counsel said he would discuss petitioners' supplemental expert report with his client. The undersigned held another status conference on June 19, 2015, during which she gave respondent a deadline of August 21, 2015 to file a report by a pediatric immunologist responding to Dr. Tornatore's report.

After receiving two extensions of time, respondent filed her expert report by Dr. Steven J. McGeady on September 24, 2015. Dr. McGeady stated that he is not convinced that the flu vaccine was the most likely cause of L.A.'s encephalopathy. Ex. E1 at 4. Like respondent's other experts, Dr. McGeady stated he believed L.A.'s condition was most likely solely caused by a mycoplasma infection. Id.

The undersigned held a status conference on October 16, 2015, during which she ordered petitioners to file a responsive report by Dr. Tornatore. She also cited to several cases in which she held for a petitioner when the petitioner's illness at the time of the vaccination was a contributing factor to petitioner developing a vaccine injury.

Petitioners filed their supplemental expert report on October 28, 2015, in which Dr. Tornatore stated his view that the flu vaccine caused L.A.'s development of bilateral striatal necrosis remained unchanged. Ex. 54 at 2.

The undersigned held a telephonic status conference on December 16, 2015. During the status conference, the undersigned stated that she believed this case was a good case for settlement, and ordered both parties to speak to their clients about settling the case.

On January 18, 2016, petitioners filed a Motion for Interim Attorneys' Fees and Costs, asking for $356.95 in petitioners' costs, $65,752.25 in interim attorneys' fees, and $28,332.81 in attorneys' costs. Petitioners filed a Motion for Findings of Fact on the same day, in which they moved for 50 findings of fact based on the record. Respondent filed responses to both of petitioners' motions on February 4, 2016. The undersigned's law clerk contacted petitioners' counsel on the same date. Petitioners' counsel indicated he would not be filing replies to either of respondent's responses. The undersigned issued an Order denying petitioners' Motion for Findings of Fact on February 9, 2016. During a status conference on February 19, 2016, the undersigned and the parties discussed possible hearing dates.

The matter of petitioners' interim attorneys' fees and costs is now ripe for adjudication.

**FACTUAL HISTORY**

L.A. was generally healthy before receiving flu vaccine on December 29, 2010, when he was five years old. Med. recs. Ex. 1 at 21.

When L.A. visited Baptist Pediatrics on December 29, 2010, his mother reported that L.A. had a fever, cough, and headache, which began on December 28, 2010. Id. Nevertheless, L.A. received a flu vaccine during his visit to the doctor's office. Id. L.A.'s fever continued for the next two days. Med. recs. Ex. 18, at 5.

On December 31, 2010, L.A. had a prolonged focal seizure. Med. Recs. Ex. 3, at 4. L.A.'s seizure lasted 25 minutes. Id. During his hospitalization at Wolfson's Children's Hospital after the seizure, L.A.'s condition began to deteriorate. Med. recs. Ex. 19, at 29. He had problems with motor control of his arms and legs and could not speak. Id. L.A. was diagnosed with encephalitis during his stay at Wolfson's Children's Hospital. Id. Dr. Patterson later diagnosed L.A. with bilateral striatal necrosis. Med. recs. Ex. 18, at 37.

**DISCUSSION**

**I.**     **Entitlement to Fees Under the Vaccine Act**

Under the Vaccine Act, a special master or the U.S. Court of Federal Claims may award fees and costs for an unsuccessful petition if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013).

"Good faith" is a subjective standard. Hamrick v. Sec'y of HHS, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007). A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred. Turner v. Sec'y of HHS, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Petitioners are "entitled to a presumption of good faith." Grice v. Sec'y of HHS, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996).

"Reasonable basis" is not defined in the Vaccine Act or Program rules. It has been determined to be an "objective consideration determined by the totality of the circumstances." McKellar v. Sec'y of HHS, 101 Fed. Cl. 297, 303 (Fed. Cl. 2011). In determining reasonable basis, the court looks "not at the likelihood of success [of a claim] but more to the feasibility of the claim." Turner, 2007 WL 4410030, at *6 (citing Di Roma v. Sec'y of HHS, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). Factors to be considered include factual basis, medical support, jurisdictional issues, and the circumstances under which a petition is filed. Turner, 2007 WL 4410030, at *6–*9. Traditionally, special masters have been "quite generous" in finding reasonable basis. Turpin v. Sec'y of HHS, No. 99-564V, 2005 WL 1026714, at *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005); see also Austin v. Sec'y of HHS, 10-362V,

2013 WL 659574, at *8 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) ("The policy behind the Vaccine Act's extraordinarily generous provisions authorizing attorney fees and costs in unsuccessful cases—ensuring that litigants have ready access to competent representation—militates in favor of a lenient approach to reasonable basis."). Special masters have found reasonable basis to file a claim absent medical records or opinions supporting vaccine causation. See Austin, 2013 WL 659574, at *8; Hamrick, 2007 WL 4793152.

### A. Interim Fee Awards are Appropriate Under the Vaccine Act

The Federal Circuit ruled that interim fee awards are permissible under the Vaccine Act in Avera v. Secretary of Health and Human Services, 515 F.3d 1343, 1352 (Fed. Cir. 2008). The Federal Circuit again found interim fee awards appropriate under the Vaccine Act in Shaw v. Secretary of Health and Human Services, 609 F.3d 1372 (Fed. Cir. 2010). See also Cloer v. Sec'y of HHS, 675 F.3d 1358, 1361–62 (Fed. Cir. 2012), aff'd sub nom. Sebelius v. Cloer, 133 S. Ct. 1886 ("Congress made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act."); Vaccine Rule 13(b) (mentioning "interim fees").

Subsequently, a number of judges and many special masters have found interim fee awards permissible under various circumstances. See, e.g., Woods v. Sec'y of HHS, 105 Fed. Cl. 148, 154 (Fed. Cl. 2012) (Judge Williams affirmed the special master's award of interim fees and suggested that when counsel withdraws, and it is unclear how long case resolution might take, an interim award may be appropriate); Friedman v. Sec'y of HHS, 94 Fed. Cl. 323, 334 (Fed. Cl. 2010) (Judge Damich found that the statute permits interim fee awards and that the special master acted within his discretion in choosing not to award interim fees); Doe/11 v. Sec'y of HHS, 89 Fed. Cl. 661, 668 (Fed. Cl. 2009) (Judge Williams reversed the special master's denial of interim fees); Bear v. Sec'y of HHS, No. 11-362V, 2013 WL 691963, at *5 (Fed. Cl. Spec. Mstr. Feb. 4, 2013) (Special Master Hastings awarded interim fees over respondent's objection in a case where petitioner's counsel was going to withdraw, and the petition had been pending for more than 19 months); Lumsden v. Sec'y of HHS, No. 97-588, 2012 WL 1450520, at *6 (Fed. Cl. Spec. Mstr. Mar. 28, 2012) (former Chief Special Master Vowell awarded interim fees in an autism case over respondent's objection when petitioner's attorney was withdrawing from the case); Edmonds v. Sec'y of HHS, No. 04-87V, 2012 WL 1229149, at *13 (Fed. Cl. Spec. Mstr. Mar. 22, 2012) (then-Chief Special Master Campbell-Smith awarded interim fees over respondent's objection in an autism case in which petitioner's counsel was preparing to withdraw); Dudash v. Sec'y of HHS, No. 09-646V, 2011 WL 1598836, at *6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (Special Master Moran found an award of interim fees appropriate); Burgess v. Sec'y of HHS, No. 07-258V, 2011 WL 159760, at *2 (Fed. Cl. Spec. Mstr. Jan. 3, 2011) (Former Special Master Lord awarded interim attorneys' fees in a case where petitioners were soon to be represented by other counsel).

### B. Interim Fees are Appropriate in This Case

In Avera, the Federal Circuit held that while interim fees are not banned by the statute, they were not appropriate in that case because appellants sought only higher fees after dismissal

5

of their case. 515 F.3d at 1352. The Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." Id. In denying an interim fee award, the Federal Circuit reasoned, "The amount of fees here was not substantial; appellants had not employed any experts; and there was only a short delay in the award pending the appeal." Id.

In Shaw, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. The U.S. Court of Federal Claims and several special masters have found an interim fee award appropriate when petitioner's counsel withdraws from the case. See Woods, 105 Fed. Cl. at 154; Bear, 2013 WL 691963 at *5; Lumsden, 2012 WL 1450520 at *6; Edmonds, 2012 WL 1229149 at *13; Burgess, 2011 WL 159760 at *2.

Respondent did not raise any specific objections to petitioners' fee application in her response to petitioners' Motion for Interim Attorneys' Fees and Costs. Instead, respondent said she "respectfully defers to the [undersigned's] sound discretion in adjudicating the merits of petitioners' interim fee application." Resp. at 1. Respondent said that she submits to the undersigned's discretion "any specific objections to the reasonableness of the number of hours billed by petitioners' counsel and/or the costs claimed for this case, including the costs claimed by Dr. Tornatore." Id. at 2.

**1. Good Faith & Reasonable Basis**

Petitioner is entitled to a presumption of good faith. There is no evidence that this petition was brought in bad faith. Therefore, the undersigned finds that the good faith requirement is met.

The undersigned also finds that petitioners had reasonable basis to file the petition. L.A.'s medical records support that he had the injuries complained of in the petition, namely seizures and an encephalopathy. Med. recs. Ex. 18, at 37. Dr. Tornatore, a reputable doctor with excellent credentials, was willing to write three medical expert reports supporting petitioners' claim. See Exs. 46, 53, 54. Therefore, the undersigned finds that petitioners had a reasonable basis to bring this claim.

**2. Protracted Proceedings**

Additionally, interim attorneys' fees and costs are appropriate because waiting for the conclusion of the case would place an undue hardship on petitioners. Petitioners' case has been pending for almost three and a half years. The parties are discussing scheduling a hearing in late 2016 or early 2017. See Order dated Feb. 19, 2016. It may be months to years before an entitlement ruling is issued. Thus, the undersigned finds an award of interim fees and costs appropriate at this juncture in the case.

## II. Reasonableness of Requested Attorneys' Fees and Costs

### A. Reasonable Attorneys' Fees

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task. See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### 1. Hourly Rates

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (citation and quotation omitted). In Avera, the Federal Circuit found that in Vaccine Act cases, a court should use the forum rate, i.e., the DC rate, in determining an award of attorneys' fees. 515 F.3d 1343 at 1349. At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets. Id. (citing Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755 (D.C. Cir. 1999)). In cases where the bulk of the work is completed outside the District of Columbia, and there is a "very significant difference" between the forum hourly rate and the local hourly rate, the court should calculate an award based on local hourly rates. Id. (finding the market rate in Washington, DC to be significantly higher than the market rate in Cheyenne, Wyoming).

Mr. Shoemaker asks for a rate of $385.00 in 2012, $400.00 for his work in 2013, $415.00 for his work in 2014 and 2015, and $430.00 for his work in 2016. Ms. Gentry asks for a rate of $361.00 for her work in 2013, $375.00 for her work in 2014, $400.00 for her work in 2015, and $415.00 for her work in 2016. Ms. Knickelbein asks for a rate of $300.00 for her work done in 2012, $325.00 for her work in 2013 and 2014, and $350.00 for her work in 2015.

The undersigned finds that the hourly rates requested by petitioners are reasonable. Petitioners' attorneys completed the majority of their work on this case in Vienna, Virginia. There is not "very significant difference" between the Washington, DC hourly rate and the hourly rate in Vienna, Virginia. Avera, 515 F.3d at 1349. Finally, Mr. Shoemaker, Ms. Gentry, and Ms. Knickelbein ask for rates comparable to the rates the attorneys asked for in McCulloch. McCulloch v. Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec.

Mstr. Sept. 1, 2015). The undersigned finds that this rate is reasonable, because Mr. Shoemaker, Ms. Gentry, and Ms. Knickelbein have experience in the Vaccine Program that is comparable to the experience of the attorneys in McCulloch.

### 2. Hours Reasonably Expended

The lodestar approach requires that the reasonable hourly rate be multiplied by the number of hours "reasonably expended on the litigation." Avera, 515 F.3d at 1347-48 (quotation and citation omitted). Counsel must submit fee requests that include contemporaneous and specific billing entries, indicating the task performed, the number of hours expended on the task, and who performed the task. See Savin ex rel. Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 315-18 (Fed. Cl. 2008). Counsel must not include in their fee request hours that are "excessive, redundant, or otherwise unnecessary." Saxton, 3 F.3d at 1521 (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce hours *sua sponte,* apart from objections raised by respondent and without providing petitioner notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009).

Respondent does not raise any specific objections to the number of hours petitioners' counsel spent working on this case. The undersigned has reviewed petitioners' attorneys' billing entries and finds the hours expended on this case to be reasonable. Therefore, the undersigned will not reduce the number of hours petitioners ask for in their application for attorneys' fees and costs.

### B. Reasonable Attorneys' Costs

Attorneys' costs must be reasonable as well. See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

### 1. Expert Fees

Petitioners ask for $19,400.00 in costs for the time that their expert, Dr. Tornatore, spent working on the case. Dr. Tornatore spent 48.50 hours on the case, and charged a rate of $400.00 an hour. Dr. Tornatore wrote three expert reports, reviewed L.A.'s lengthy medical records, and reviewed the expert reports of all three of respondent's experts. Dr. Tornatore is a reputable doctor who is experienced in the Vaccine Program. Therefore, the undersigned finds that both the number of hours Dr. Tornatore spent on the case and Dr. Tornatore's hourly rate are reasonable.

**CONCLUSION**

The undersigned finds an award of interim attorneys' fees and costs appropriate. She also finds that the amount petitioners ask for in their application for attorneys' fees and costs is reasonable. **Accordingly, the court awards:**

a. **$94,085.06**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioner and Shoemaker, Gentry & Knickelbein in the amount of **$94,085.06**; and

b. **$356.95**, representing petitioners' costs. The award shall be in the form of a check made payable to petitioners for **$356.95**.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[2]

**IT IS SO ORDERED.**

Dated: February 18, 2016                                     /s/ Laura D. Millman
                                                             Laura D. Millman
                                                             Special Master

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.